**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

**DAWN WALKER** — **PLAINTIFF**

**v.** — **No. 5:20-cv-77-BJB**

**DR. SARABETH MARTIN AND FAIRVIEW PHYSICIANS NETWORK, LLC** — **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Dr. Sarabeth Martin performed several urological procedures and inserted a stent in late 2018 to help Dawn Walker more easily pass a kidney stone. Not all that easily, apparently: Walker alleges she almost immediately suffered severe complications. She filed negligence and informed-consent claims against Dr. Martin and Olympus Corporation (the stent manufacturer) in state court. Olympus removed the case to federal court based on diversity of citizenship and moved to dismiss the claims against it. After the Court granted that motion and dismissed the claims against Olympus, Walker amended her complaint to add Fairview Physicians Network, LLC—Dr. Martin's employer at the time of Walker's procedure.

Fairview, like Walker, is a citizen of Kentucky, however. So its addition would destroy the diversity of the parties' citizenship and likewise the Court's subject-matter jurisdiction. What to do? Federal procedural rules afford trial judges discretion to get rid of either the nondiverse defendant (by dismissal under FED. R. CIV. P. 21) or the nondiverse case (by remand under 28 U.S.C. § 1447(c)). *See* 16 *Moore's Federal Practice Civil* § 107.151 (2023). Remanding the entire case at this stage would make little sense—particularly since the claims against Fairview are fairly new to the case while those against Martin have been pending for three years. Both sets of claims are old enough, in fact, that they would inevitably fail on timeliness grounds. And the claims lack the necessary certificate of merit in any event—as Martin explained in her motion for summary judgment. The Court therefore dismisses Fairview from the case to preserve its subject-matter jurisdiction over the preexisting claims against Martin, grants Martin's motion for summary judgment (DN 90), denies Walker's countervailing motion for summary judgment (DN 89), and denies Walker's motion for mediation (DN 100) as moot.[1]

---

[1] Walker filed a motion requesting court-ordered mediation (DN 100) alongside her response to the Court's show-cause order (DN 99). Although the parties are of course always free to seek an amicable resolution of their differences in another forum, the Court declines

## I. Allegations of Negligence

Dr. Martin performed the kidney-stone procedure on October 2, 2018. Amended Complaint (DN 52) at ¶ 10. She inserted a urethral stent to help Walker pass the kidney stone. *Id.* The stent proved quite painful, and Walker returned so Dr. Martin could remove it just three days later. ¶ 21. The next week, however, Walker experienced fatigue and shortness of breath while hiking and again sought out Dr. Martin. ¶¶ 22–23. Evidently unsatisfied, she sought additional treatment from different medical professionals at Baptist Health near the end of October. ¶¶ 26–27.

A doctor at Baptist diagnosed Walker with internal bleeding and sent her back to Dr. Martin for treatment. ¶¶ 24, 28. But Dr. Martin then referred Walker to Dr. Ramesh Patel—a hematologist also employed by Fairview—in December 2018 to stop the bleeding. ¶ 30. Nothing in the record indicates that Walker received any treatment from Dr. Martin after this referral. Walker asserts that Dr. Martin nominally remained her urologist until July 2019, ¶ 31, but does not dispute that Dr. Martin "did not see [Walker] as a patient after December 31, 2018," ¶ 31. Dr. Patel treated Walker through late 2019. Plaintiff's Response to MSJ (DN 94) at 15.

## II. This Dispute

Walker filed her initial complaint in state court in April 2020. It named two defendants: Dr. Martin and Olympus Corporation of the Americas, the medical-device manufacturer that made Walker's stent. DN 1-1 at ¶¶ 2–5. Olympus—a citizen of New York by incorporation and Pennsylvania by its principal place of business—promptly removed the case to this Court, citing diversity of citizenship. Notice of Removal (DN 1) at ¶ 9. Walker is a Kentucky citizen. Complaint ¶ 1. Dr. Martin lived in Kentucky when she was treating Walker, but moved to Montana in July 2019, making her a Montana citizen at the time of filing. Amended Complaint ¶ 3. So the Court unquestionably had subject-matter jurisdiction over this case at the time of removal.

But a year later, before this case's reassignment, the Court dismissed the claims against Olympus as time-barred and dropped Olympus from the suit. Memorandum Opinion and Order (DN 22) at 5. The Court subsequently granted Walker leave to amend her complaint. Amended Scheduling Order (DN 51) at ¶ 3. Her amended complaint added Fairview as a defendant. DN 52 at ¶ 4.

Fairview is a Kentucky resident. Defendants' Response to Show Cause Order (DN 98) at 1 n.1. It is a limited liability company whose sole member is Jennie Stuart

---

to order mediation because granting judgment to Martin and dismissing Fairview disposes of all remaining claims and renders the motion for mediation moot.

Medical Center, Inc., a hospital in Hopkinsville, Kentucky. Annual Report Filing (DN 93-6). Defendants explain that Jennie Stuart is a "Kentucky nonprofit hospital in good standing with the Kentucky Secretary of State" that serves Southeastern Kentucky and parts of Tennessee. Defendants' Reply to MSJ (DN 93) at 6. Walker does not contest this description of Jennie Stuart's citizenship; indeed, she "has no objection to the court remanding the case." Plaintiff's Response to Show Cause Order (DN 99) at 7. And a glance at the Kentucky Secretary of State's website—an official and public "record" subject to judicial notice, *see* FED. R. EVID. 201(b)(2)—confirms Jennie Stuart Medical Center is in fact incorporated in Kentucky. Given its parent company's citizenship, therefore, Fairview—like Walker—is likewise a Kentucky citizen for jurisdictional purposes. *See* 28 U.S.C. § 1332(c)(1); *see Delay v. Rosenthal Collins Grp. LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (an LLC assumes the citizenship of all its members for purposes of diversity jurisdiction). Despite the amended complaint, Walker did not file a motion to remand and Dr. Martin did not contest the addition of the new defendant.

Rather, the parties engaged in protracted discovery before filing simultaneous motions for summary judgment. *See* Plaintiff's MSJ (DN 89), Defendants' MSJ (DN 90). Based on concerns about Fairview's citizenship and complete diversity, the Court ordered the parties to show cause (DN 97) why the Court should not remand the case to state court. The Defendants responded (DN 98 at 1 n.1) that Fairview is indeed a Kentucky citizen. Walker's response (DN 99 at 1–7) largely argued the merits of the informed-consent claim rather than the jurisdictional question. But it did state Walker's position that she "has no objection to the court remanding the case to the Christian Circuit Court" assuming remand is on "the same status the case is in now." *Id.* at 7. The response also suggested that Walker's compliance with the Court's scheduling order "remed[ied] any jurisdictional problems." *Id.*

## III. Fairview Should Be Dismissed to Avoid the Jurisdictional Issues It Creates

At this stage of the case no one appears to question whether Fairview and Walker are both jurisdictional citizens of Kentucky. Fairview's addition to the case destroys complete diversity given that Kentucky citizens now fall on opposite sides of the case. *See, e.g.*, *Strawbridge v. Curtiss,* 3 Cranch 267, 2 L.Ed. 435 (1806). That Walker added Fairview in response to a court order setting a deadline for amended pleadings obviously can't circumvent statutory limits on the district court's jurisdiction. *Contra* Plaintiff's Response to Show Cause at 7. So this case cannot proceed in federal court with the current cast of characters. "Misjoinder of parties is not a ground for dismissing an action." FED. R. CIV. P. 21. "But on motion or on its own, the court may at any time, on just terms, add or drop a party." *Id.* "When misjoinder involves the joining of a party who would be proper but whose presence destroys diversity, … courts typically will seek to avoid dismissing the action by

eliminating the party whose presence causes the jurisdictional defect." 7 WRIGHT & MILLER, *Federal Practice and Procedure* § 1684 (3d ed. 2016) (discussing Rule 21 dismissals of nondiverse parties to preserve jurisdiction). "[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989). A court's discretionary authority to dismiss or remand arises from Rule 21's specification that dismissal is permissive rather than mandatory ("may … add or drop") and informed by equitable considerations ("just terms"). The upshot is that, under Rule 21, "[t]he manner in which a trial court handles misjoinder lies within that court's sound discretion." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988).

This situation created by Fairview's addition calls for the Court to exercise this equitable discretion. Deep into the case, Walker added Fairview. To be sure, she did so without seeking leaving to add the nondiverse party. If she had, leave surely would've been denied or the whole case sent to state court: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Either way, the case as currently composed wouldn't be pending in federal court. And Walker also added Fairview without objection—not that this matters much when subject-matter jurisdiction is implicated. "Subject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thayer*, 565 U.S. 134, 141 (2012). The happenstance that Fairview showed up unaccompanied by any request to the Court explains why the jurisdictional problem has only just come to light. *See generally Mayes v. Rapoport*, 198 F.3d 457, 462 n.11 (4th Cir. 1999) ("Since no party raised the fact that Key was not diverse, and since the district court had no prior opportunity to pass upon the propriety of Key's joinder, the district court properly could have invoked its authority, under § 1447(e) and related authority, to determine whether Key was an appropriate party.").

That this issue *has* come to light raises the question whether to remand the three-year-old suit or dismiss the newly added party. Courts deciding whether to remand the case or dismiss a nondiverse, dispensable party added by a post-removal amendment typically consider four factors: 1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction," 2) "whether plaintiff has been dilatory in asking for amendment," 3) "whether plaintiff will be significantly injured if amendment is not allowed," and 4) "any other factors bearing on the equities." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).[2] "[C]ourts frequently

[2] The Sixth Circuit appears to have never cited *Hensgens*, though many other circuits have relied on its multifactored approach in considering the appropriateness of dismissal under Rule 21. *See, e.g., Avenatti v. Fox News Network LLC*, 41 F.4th 125 (3d Cir. 2022) (collecting cases). These four factors are almost identical, moreover, to those the Sixth Circuit

employ [Rule] 21 to preserve diversity jurisdiction over a case by dropping a nondiverse party if the party's presence in the action is not required under [Rule] 19."). WRIGHT & MILLER § 1685.

In a recent decision by Judge Bibas, sitting by designation as a district judge, the court dismissed the nondiverse party via Rule 21 on the ground that its addition was meant to defeat diversity—even when the plaintiff amended the complaint "as of right." *See Avenatti v. Fox News Network LLC*, 41 F.4th 125, 129 (3d Cir. 2022) (applying *Hensgens* factors and affirming district court's dismissal of party whose joinder would destroy complete diversity). The district court's thoughtful reconciliation of the limited statutory authority afforded by § 1447, the open-ended equitable authority conferred by Rule 21, and the hazards of allowing removed plaintiffs to destroy diversity jurisdiction through amendments as of right aptly describes the question facing district courts in situations such as this:

> Often, a plaintiff must seek the district court's leave to amend his complaint. Fed. R. Civ. P. 15(a)(2). If the plaintiff proposes a joinder that would destroy diversity jurisdiction, and the case has already been removed to federal court, the court has discretion to grant or deny the amendment. § 1447(e). But that process seems to have a gap: when a plaintiff amends a complaint within twenty-one days of serving the

---

has directed district courts to analyze when considering a plaintiff's motion to *join* nondiverse defendants under 28 U.S.C. § 1447(e). Those are "(1) the extent to which the proposed amendment's intent was to destroy federal jurisdiction, (2) whether the plaintiff was dilatory in filing the motion to amend, (3) whether the plaintiff would be significantly injured if the motion to amend were denied, and (4) any other equitable factors." *Telecom Decision Makers, Inc. v. Access Integrated Networks, Inc.*, 654 F. App'x 218, 221 (6th Cir. 2016). Section 1447(e) may not be appropriate to use in this instance because it applies when "the plaintiff *seeks* to join additional defendants." 28 U.S.C. § 1447(e) (emphasis added). And here, Fairview has already been added to the case and has participated in it for more than a year. Walker is therefore no longer "seeking" to join Fairview as a party in any meaningful sense; Walker's already done so. So the Court treats Walker's addition of a nondiverse party as a "misjoinder" subject to Rule 21.

Because the tests under Rule 21 and § 1447 are substantially identical, however, the question is largely academic: the Court would reach the same result under either provision. *See Maier Solar Eng'g, LLC v. Wells Fargo, NA*, No. 21-cv-13292, 2022 WL 884367, at *3 (D.N.J. March 25, 2022) (citing *Mayes*, 198 F.3d at 462 n.11) ("If the Court determines that post-removal joinder of a nondiverse defendant is improper under section 1447(e), the court may dismiss the nondiverse defendant pursuant to section 1447(e) and Rule 21 of the Federal Rules of Civil Procedure."); *Avenatti*, 41 F.4th at 131 ("As § 1447(e) and Rule 21 both give district courts the same broad discretion in making the same underlying decision—whether to retain jurisdiction—we see no reason why courts should be forbidden to consider the same factors in exercising power pursuant to either provision.").

> complaint, answer, or motion to dismiss, he does not need the court's permission. R. 15(a)(1). He can amend as of right. And if that amendment adds a new, nondiverse defendant, the court seems stuck: it cannot review the propriety of that joinder but must instead remand for lack of jurisdiction. § 1447(c).
>
> Most courts prevent this trick from tying the court's hands. If district courts could not police these joinders, plaintiffs could routinely destroy diversity jurisdiction soon after removal. So most courts recognize a district court's power to reject such post-removal joinders, even those made as of right.
>
> Some courts read § 1447(e) as letting them deny even amendments as of right that would destroy diversity. But the statute's text addresses situations where "the plaintiff *seeks* to join additional defendants." § 1447(e) (emphasis added). We need not expand the text. The rules already give district courts another way to police joinders, even those as of right. The court, "on motion or on its own," can "at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. So it can use Rule 21 to dismiss dispensable parties to the suit in order to preserve diversity.
>
> Even though § 1447(e) does not govern amendments as of right, its factors are not irrelevant; courts can look to them by analogy. After removal, courts should consider under Rule 21 the same factors that they consider under § 1447(e) in deciding whether to drop a party to maintain diversity. Whether the joinder is proposed or has already happened, the inquiry is the same: should the federal court remand because of a new nondiverse party, or not?

*Avenatti v. Fox News Network, LLC*, No. 20-cv-1541, 2021 WL 2143037, at *2 (D. Del. May 26, 2021) (citations and quotation marks omitted).

The Third, Fourth, Seventh, and Eighth Circuits have followed this approach.[3] Although the Sixth Circuit appears not to have published an opinion addressing this

[3] *Avenatti*, 41 F.4th at 130 (3d Cir. 2022) ("Where, as here, a nondiverse defendant has been added post-removal by amendment as of right, courts may sua sponte consider dropping the spoiler under Rule 21. If the new defendant is dispensable and can be dropped without prejudicing any party, then courts may go on to consider the *Hensgens* factors to guide their discretion 'on just terms.'"); *Mayes*, 198 F.3d at 462 n.11 (4th Cir. 1999) (Under Rule 21, "a district court has the authority to reject a post-removal joinder that implicates 28 U.S.C. § 1447(e), even if the joinder was without leave of court."); *Schur v. L.A. Weight Loss Centers*, 577 F.3d 752, 759 (7th Cir. 2009) (applying *Hensgens* factors to assess "whether post-removal joinder of a nondiverse party is appropriate"); *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302,

lacuna (at least the parties cite none), two unpublished decisions endorse the same rule: Rule 21 is available to dismiss dispensable nondiverse parties on just terms that avoid undue prejudice. *See Yuille v. American Home Mortg. Servs.*, 483 F. App'x 132, 134 n.1 (6th Cir. 2012) ("Federal Rule of Civil Procedure 21 allows a court to preserve its diversity jurisdiction by 'drop[ping]' a non-diverse, dispensable party."); *Maher v. Federated Serv. Ins.*, 666 F. App'x 396, 401 (6th Cir. 2016) ("[A]fter reviewing the record and carefully consider[ing] whether … dismissal … will prejudice any of the parties in the litigation, we conclude that both Brooklyn Ford and Strang are dispensable parties and order that they be dropped from the case.") (quotation marks omitted).[4]

Whether Fairview is an indispensable party is a threshold question. If not, then dismissing it merely to preserve jurisdiction over an incomplete dispute would make little sense as a matter of procedure or efficiency. *See generally* WRIGHT & MILLER § 1602 ("Rule 19 is designed to protect the interests of absent persons as well as those already before the court from multiple litigation or inconsistent judicial determinations."). "A party is deemed indispensable under Rule 19 only if, in his absence, (1) the absentee is likely to be harmed, (2) one of the parties may be subject to multiple or otherwise inconsistent obligations, or (3) complete relief cannot be accorded to the parties." *Bowling Trans., Inc. v. NLRB*, 352 F.3d 274, 282 (6th Cir. 2003). None of those risks appear here. !

Walker addresses the issue with a single sentence: "The complaint had to be amended … because Dr. Martin stressed that she worked for Fairview and that she had a contract with Fairview that made Fairview an indispensable Defendant." Show-Cause Response at 4. But Walker doesn't explain *why* Fairview is indispensable under Rule 19 or what about Martin's testimony compelled amendment. Indeed, Martin's opposition (DN 49) to Walker's first summary-judgment motion didn't even mention Fairview. Walker characterizes Fairview as "the primary corporate essential defendant," but what that means remains unclear. Yes, Dr. Martin worked for Fairview. Yet "Rule 19 does not require joining joint tortfeasors or both principal and agent." *Avenatti*, 2021 WL 2143037, at *3; *see also*

---

308–09 (8th Cir. 2009) ("[T]he district court accurately considered the relevant [*Hensgens*] factors and held the balancing test weighed against the addition of the nondiverse defendant.").

[4] As to non-diverse defendants added *before* removal, many decisions approach the sever-or-remand question under the banner of the fraudulent-joinder doctrine. *See, e.g.*, *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432–34 (6th Cir. 2012) (nondiverse defendant named before removal). Defendants added after removal raise somewhat different concerns. *See, e.g.*, *Miller v. USAA General Indemnity Co.*, No. 6:23-cv-02, 2023 WL 4052993 (E.D. Ky. June 16, 2023). And in any event the parties here haven't raised fraudulent joinder.

*Wilson v. Gordon*, 822 F.3d 934, 957 (6th Cir. 2016) ("[J]oint tortfeasors are not required parties under Rule 19(a).").

Fairview certainly has not argued any harm; it's trying to get out of rather than into this lawsuit. *See* Defendants' Response to Show Cause Order at 2 (seeking severance and dismissal of the claims against Fairview). Dr. Martin has not objected that she would face multiple or inconsistent obligations if Fairview were not a party. And nothing indicates that "complete relief" would be unavailable if Walker proceeded against the allegedly negligent doctor but not the doctor's employer.

The next question is whether to dismiss Fairview in order to preserve subject-matter jurisdiction or else to remand the case based on the jurisdictional problem Fairview's presence has caused. Three of the four factors counsel in favor of dismissing Fairview and retaining jurisdiction over the claims against Dr. Martin.

The first factor described in *Hensgens*—whether the purpose of amendment was to defeat diversity jurisdiction—counsels in favor of remand, but not terribly strongly. Walker does *not* appear to have added Fairview with "the purpose … to defeat federal jurisdiction." *Hensgens*, 833 F.2d at 1182. If she had, she presumably would have moved to remand the case to state court by now. On the other hand, on the eve of summary judgment she is now perfectly willing to accept a remand to state court based on her earlier amendment. Plaintiff's Response to Show Cause at 7.

Second, Walker has been at least somewhat dilatory. *Hensgens*, 833 F.2d at 1182. She did not amend the complaint to add Fairview until a year after she sued Dr. Martin, and doesn't appear to have pursued Dr. Martin's employer (either Jennie Stuart Medical Center or Fairview) earlier in the case. She didn't ask Dr. Martin about her employer in an interrogatory, for instance, and hasn't offered any reason why she couldn't have discovered this information before Dr. Martin's deposition. Plaintiff's Response to MSJ at 56.

Third, and most important, dropping Fairview wouldn't prejudice Walker because the claims she added against it appear to be futile. "[T]here can be no prejudice to a plaintiff who is denied leave to file an amendment that fails to state a valid claim for relief under federal pleading standards." *Lukasewicz v. Valtris Specialty Chem. Co.*, No. 2:21-cv-4128, 2021 WL 3732902, at *2 (D.N.J. Aug. 23, 2021) (citing *Hensgens*, 833 F.2d at 1182); *Carbo v. Wal-Mart Louisiana LLC*, No. 6:20-cv-1192, 2020 WL 7373504, at *6 (W.D. La. Nov. 30, 2020) (similar). Kentucky law imposes a one-year statute of limitations on medical-malpractice actions. KY. REV. STAT. § 413.140(1)(e). That period began no later than December 2018, *see* below at IV.A, almost three years before Walker added Fairview to this case. She offers no argument why her cause of action against Fairview would've accrued later than her cause of action against a doctor Fairview employed. Because Walker's claims against

Fairview are time-barred, dismissing it would not prejudice Walker's ability to prosecute those claims.

The lack of prejudice is clear for a separate reason as well—indeed, one of the reasons Fairview is a dispensable party. Walker hasn't explained any factual or legal basis why she could recover against Fairview but not Walker. *Cf. Avenatti*, 2021 WL 2143037, at *3 ("Avenatti can recover fully against Fox News, without Hunt," and "Rule 19 does not require joining joint tortfeasors or both principal and agent.").

Fourth, dropping Fairview is the most equitable move at this juncture. This case has been pending for more than three years. The parties have amended the pleadings, engaged in discovery, added and dropped parties, and filed summary-judgment briefs. Only one aspect of the proceedings undermines the Court's jurisdiction: adding Fairview. Remanding the case to state court on the eve of summary judgment because the non-movant misjoined another defendant would be inefficient for the court system, ineffective for Walker, and inequitable to Dr. Martin. "[T]he diverse defendant has an interest in retaining the federal forum," after all. *Hensgens*, 833 F.2d at 1182. "Indeed, the removal statutes are predicated on giving the diverse defendants a choice of a state or federal forum." *Id.*

## IV. Dr. Martin is Entitled to Summary Judgment

Dismissal would doubly prejudice Dr. Martin because she has, in a second round of summary-judgment briefing, shown the absence of a genuine dispute of material fact and her entitlement to judgment as a matter of law. FED. R. CIV. P. 56(a). She has identified the unrebutted record support for her motion on two bases: timeliness and the lack of medical certification. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And Walker hasn't identified any specific facts demonstrating a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

### *A. Walker's Claims Against Dr. Martin Are Time-Barred*

As discussed above, "[a]n action against a physician, surgeon, dentist, or hospital licensed pursuant to KRS Chapter 216, for negligence or malpractice" must be brought within one year. KY. REV. STAT. § 413.140(1)(e). This limitations period begins to run when the plaintiff discovers—or, with due diligence, should have discovered—her injury. *Elam v. Menzies*, 594 F.3d 463, 466 (6th Cir. 2003) (citing *Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709, 712 (Ky. 2000)). And it applies to Walker's informed-consent claim as well as her malpractice claim. *See Hawkins v. Rosenbloom*, 17 S.W.3d 116, 119 (Ky. App. 1999) (recognizing a physician's failure to obtain informed consent as an actionable form of negligence); *Cordle v. Merck & Co.*, 405 F. Supp. 2d 800, 804 (E.D. Ky. 2005) (same).

The statute is "tolled," however, "as long as the patient is under the continuing care of the physician for the injury caused by the negligent act or omission." *Harrison v. Valentini*, 184 S.W.3d 521, 524 (Ky. 2005). Called the "continuous course of treatment rule," the statute begins to run after the plaintiff's last appointment with the same doctor whose negligence allegedly caused the injury. *See id.* at 523. But continued treatment by other doctors within the same hospital or medical network does *not* toll the statute. *See Sneed v. Univ. of Louisville Hosp.*, 600 S.W.3d 221, 226, 228 (Ky. 2020).

Here, the statute of limitations on Walker's claims started to run in December 2018, Walker's last appointment with Dr. Martin. Walker didn't see Martin as a patient after December 31 according to Martin, *see* Defendants' MSJ Br. (DN 90-1) at 18, which Walker corroborates by asserting that Martin "abandoned" her as a patient after December 15, 2018, Plaintiff's MSJ at 19–20. Once Walker stopped seeing Dr. Martin for treatment pertaining to the kidney-stone procedure, the period of tolling associated with "continuous treatment" necessarily stopped. *See Harrison*, 184 S.W.3d at 523. So the latest the one-year limitations period started was the end of December 2018. Because Walker did not sue until April 2020—17 months after she last saw Dr. Martin—Kentucky law bars her claim. KY. REV. STAT. § 413.140(1)(e).

Walker doesn't dispute this timeline, but instead pegs the limitations period to Dr. Martin's departure for Montana in July 2019; until then Walker maintains Dr. Martin "would have been [her] urologist." Plaintiff's Response to MSJ at 57. But simply remaining on the books as the plaintiff's doctor (even assuming the record supports this characterization) does not trigger the "continuing course of treatment" rule; the doctor must be treating the plaintiff "for the injury caused by the negligent act or omission" for the tolling rule to apply. *Harrison*, 184 S.W.3d at 524. In *Litsey v. Allen*, for example, the Kentucky Court of Appeals held that the limitations period was not tolled when a doctor simply renewed the plaintiff's prescriptions and was not working "to correct the consequences of poor treatment." 371 S.W.3d 786, 789 (Ky. App. 2012). Importantly, Dr. Martin "did not see [Walker] as a patient" at all after December 2018—well over a year before Walker filed suit. Defendants' MSJ Br. at 18; Plaintiff's MSJ at 19–20.

What about Dr. Patel's treatment after Dr. Martin's departure for Montana? Walker says this tolls the limitations period because the two physicians were associated with the same medical group. Plaintiff's Response to MSJ at 57. But it takes more than being seen by another doctor at the same medical group to toll the statute of limitations. *Sneed* makes this clear by "declin[ing]" "to expand [the] continuous treatment doctrine to include situations when a patient continues to receive care at the same hospital but not by the same physician." 600 S.W.3d at 226–28. To be sure, other jurisdictions "have expanded the continuous treatment doctrine past the individual treating physician" when doctors work as a team such that the

patient is "considered to be a patient of the entire medical group, rather than of any one of the individual doctors." *Id.* at 227. But Walker hasn't alleged (much less shown with evidence) that Martin and Patel "work[ed] as a team." *Id.* And in any event Kentucky has not adopted this approach. Walker's claims, then, are time-barred because she sued Dr. Martin more than a year after Martin's last treatment of Walker, regardless of whether Walker subsequently saw other Fairview doctors.

### *B. Walker Included no Certificate of Merit*

Even if Walker's claims were not time-barred, summary judgment would still be warranted because Walker did not a file a certificate of merit. Kentucky law requires medical-malpractice and informed-consent plaintiffs to "file a certificate of merit with the complaint" affirming that the filer "reviewed the facts of the case and … consulted with at least one (1) expert" who confirms she has a "reasonable basis to commence the action." KY. REV. STAT. § 411.167 (plaintiffs filing "any action identified in KRS 413.140(1)(e)" [the provision discussed above in IV.A] must file this certificate). "[M]ultiple state and federal courts have held that, pursuant to the plain language of the statute, a plaintiff's failure to file a certificate of merit with the complaint warrants dismissal of claims against a healthcare provider." *Demarcus v. Homesteadidence Opco, LLC*, No. 5:22-cv-32, 2023 WL 2987554, at *2 (E.D. Ky. Apr. 18, 2023) (citations omitted); *accord Cleaver v. S. Health Partners, Inc.*, No. 3:21-cv-747, 2022 WL 1620626, at *3 (W.D. Ky. May 23, 2022) ("Cleaver's failure to file a certificate of merit provides a further and legally sufficient reason to dismiss the claim as well.").

Walker did not file a certificate of merit with her initial complaint, with the amended complaint, or at any other point during the litigation. This much is uncontested. That failure to comply with the requirements for a malpractice case under Kentucky law means Walker has failed to state a claim on which relief can be granted for this reason as well.

Walker argues that Dr. Martin waived her right "to make an argument about a Certificate of Merit" because she did not raise the issue before the pleading stage closed. Plaintiff's Response to MSJ at 59–60. But the Federal Rules expressly allow litigants to raise a failure to state a claim in any pleading, by motion, or as late as trial. FED. R. CIV. P. 12(h)(2); WRIGHT & MILLER § 1361. (The same arguments may typically arrive later through a motion for judgment on the pleadings, anyway.) Multiple Kentucky courts have dismissed medical-malpractice cases for lacking a certificate of merit even when, as here, the issue was raised later in the litigation. *See McWhorter v. Baptist Healthcare System, Inc.*, No. 2021-CV-844-MR, 2022 WL 1697666, at *2 (Ky. Ct. App. May 27, 2022) (motion made post-answer); *Sanchez v. McMillin*, No. 2020-CA-52-MR, 2022 WL 981843, at *4–5 (Ky. Ct. App. April 1, 2022) (motion made during discovery).

## ORDER

The Court dismisses Fairview from the case, *see* FED. R. CIV. P. 21, denies Walker's motion for summary judgment (DN 89), grants Dr. Martin's motion for summary judgment (DN 90), and denies Walker's motion for mediation (DN 100) as moot.

Benjamin Beaton, District Judge
United States District Court

September 15, 2023